**Opinion issued July 16, 2026**



In The

# Court of Appeals

For The

## First District of Texas

————————————

**NO. 01-23-00941-CV**

————————————

**JENNIFER KOTT-LOONEY, Appellant**

**V.**

**SUSAN MICHELLE AIELLO, Appellee**

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-52729**

**MEMORANDUM OPINION**

In this interlocutory appeal,[1] appellant, Jennifer Kott-Looney, challenges the

trial court's order denying her motion to dismiss[2] the claims of appellee, Susan

---

1     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.008, 51.014(a)(12).

2     *See id.* § 27.003(a); *see also id.* § 27.005.

Michelle Aiello, pursuant to the Texas Citizens Participation Act ("TCPA"),[3] in Aiello's suit against her for defamation and intentional infliction of emotional distress. In two issues, Kott-Looney contends that the trial court erred in denying her motion to dismiss.

We affirm.

## Background

In her original petition, Aiello alleged that in 2018 and again on November 15, 2022, David B. Looney ("David"), Kott-Looney's husband, filed for divorce from Kott-Looney. "Upon [David] deciding to file for divorce," David and Aiello "began a dating relationship."

Aiello further alleged that in mid-November 2022, Kott-Looney found Aiello's cellular telephone number and posted Aiello's telephone number on social media, with the caption: "please feel free to tell her what you think for dating a married man and wrecking a home." (Internal quotations omitted.) According to Aiello, one of Kott-Looney's friends then texted her, stating: "A married man? You're a dirty homewrecking whore. I would be so ashamed of myself. He's a husband and a father!!! Sluts like you need to disappear...PERMANENTLY DIE...Go deep throat a chainsaw." (Internal quotations omitted.)

---

[3] *See id.* §§ 27.001–.011.

Additionally, in late November or early December 2022, Aiello's roommate called her to say that when he walked out the front door of their shared home, "he saw a female walking around the front yard while a young child was in the front seat of a [car] parked in Aiello's driveway." The female "demanded to know who the roommate was, and he asked her the same." The female then "asserted she was David['s] . . . wife and wanted to speak to him." Before driving away from Aiello's home, Kott-Looney left a note on David's car window.

Subsequently, according to Aiello, in January 2023, while she was teaching at the middle school where she worked, the school receptionist called her and stated that Kott-Looney was on the telephone and wanted to know if Aiello was at school because she wanted to speak to her. Upon learning that information, Aiello immediately panicked, "as Kott[-Looney] had already stalked her home" and because Kott-Looney was not forthcoming with her name on the telephone with the receptionist. The principal of the school "deemed [the situation] a possible threat to Aiello and possibly her students," so he ordered an evacuation of Aiello's class to a different location. The incident caused Aiello's "blood pressure to spike, as she was on high alert with anxiety and fear for her personal safety." Aiello filed a report with the school district's police department, and shortly thereafter, Aiello "filed for a civil protective order in an effort to protect herself."

Aiello further alleged that in March 2023, Kott-Looney told David that she "had performed a background check on Aiello and . . . located and spoke with people Aiello knew." Kott-Looney also "reach[ed] out to third parties to find what information she could about Aiello to try to use against her."

According to Aiello, on April 14, 2023, Kott-Looney contacted a supervisor at the school where Aiello taught, with the following message: ". . . Aiello has been actively having an affair with my husband now for 6 months. She has stated she is in encouragement of affairs despite the pain to my family and my son. She also was text messaging my husband 450 times per day during class hours which made me question how she does any teaching. Just wanted to make you aware of her. She has shown no remorse for her actions at all." (Internal quotations omitted.) Aiello alleged that Kott-Looney's message was intended to "get [her] reprimanded at work, or worse, terminated from her job entirely."

Additionally, Aiello alleged that in late April 2023, Kott-Looney began sending David "images of Aiello's [previous] divorce decree," which was "a personal matter" that Kott-Looney was using "for purposes of harassment and stalking." In response, Aiello filed another report with law enforcement. When law enforcement officers spoke with Aiello, they asked her "if she was able to protect herself[] because it was likely Kott[-Looney] would continue to escalate and possibly try to hurt Aiello physically." Based on her conversation with officers,

4

Aiello believed that Kott-Looney "would ultimately try to physically harm or kill [her] and the only way to stop her would be deadly force."

Further, according to Aiello, in late April 2023 or early May 2023, Kott-Looney began sending text messages to David's parents "with disparaging, malicious, and utterly false remarks [about Aiello] with the intent to embarrass, torment, and abuse Aiello." For instance, Kott-Looney sent a text message stating: "Just FYI your son's new girlfriend has a criminal record, used to be a stripper and now sells her own pornography online. She also apparently smokes weed and does ecstasy daily." (Internal quotations omitted.)

In May 2023, Kott-Looney began "stalking" Aiello's social media pages. On May 4, 2023, Aiello "received an alert from iLock360 stating her email address and password had been accessed by a suspicious website, InstantCheckMate.com." According to Aiello, Kott-Looney "had an account with th[at] website" and had "used [it] to search public records[] for years." Kott-Looney also "created a Snapchat[4] profile with [David's] name and old [tele]phone number and tried to add

---

4    "Snapchat is a messaging application that allows users to share pictures, videos, and messages that are only available for a short time before they become inaccessible. 'Snaps' can be directed privately to selected contacts or to a semi-public 'story.'" *Igboji v. State*, No. 14-17-00838-CR, 2025 WL 556460, at *1 n.1 (Tex. App.—Houston [14th Dist.] Feb. 20, 2025, no pet.) (mem. op., not designated for publication).

5

Aiello as a friend." And Kott-Looney went through "Aiello's Pinterest posts[5] for any alleged 'dirt' on Aiello."

Aiello also alleged that, on July 31, 2023, she received an email from Belinda Colby, in the human resources department for Aiello's school district, to "make [her] aware of information received form [sic] a community member." In response to the email, Aiello had "a visceral and physical reaction." "Her heart began to beat rapidly, she felt nauseous, and she was overwhelmed with fear and anxiety" because "[s]he knew that Kott[-Looney] was the community member that contacted her school district's human resources department."

When Aiello spoke to Colby, Colby confirmed that Kott-Looney had "attempted to contact the Assistant Superintendent of [the school district] but was transferred to the human resources department." Kott-Looney told Colby that she was "the soon-to-be-ex-wife of the person Aiello was currently in a relationship with," i.e., David, and Kott-Looney accused Aiello of harassing her by text message, threatening her through Aiello's Pinterest posts, and posting scandalous pictures on Pinterest. Kott-Looney also told Colby that Aiello used narcotics, had "a sexual

---

5    "Pinterest is a social media website where users can share photos, articles, and other information about their interests on personalized web-based Pinboards which are, by default, viewable by all of Pinterest's 80 million monthly users." *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1012 (N.D. Cal. 2015).

relationship with a 17-year-old female," and had a "pornographic website." (Internal quotations omitted.)

While speaking to Kott-Looney, Colby asked her if she had ever seen Aiello use narcotics or alcohol, and Kott-Looney said that she had not. Colby also asked Kott-Looney "how she came by th[e] information" about the seventeen-year-old, and Kott-Looney said that she had "heard [it] from a third-party." When Colby asked about the purported "pornographic website," Kott-Looney told Colby that she had never visited the website, and she did not know the web address.

In discussing Kott-Looney's allegations with Aiello, Colby explained to Aiello that "what Kott[-Looney] was describing did not qualify as harassment." And after Colby visited Aiello's Pinterest page, she determined that "nothing warranted an employee investigation."

Aiello further alleged that from August 4, 2023 until August 10, 2023, the day before Aiello filed her original petition, Kott-Looney had personally messaged "at least 20 members of the [school district's private] Parent Facebook page[6] with Aiello's full name paired with malicious, disparaging, defaming, and untrue remarks." Kott-Looney also posted on social media that the school district had "hire[d] individuals who harass the parents in the district, have criminal records,

---

6    *See Jeansonne v. State*, 624 S.W.3d 78, 90 n. 13 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("Facebook, Inc. is an online social media and social networking service company." (internal quotations omitted)).

were previously strippers, online porn artists, and other wonderful things." (Internal quotations omitted.) She "told one parent that Aiello had an affair with a 17-year-old girl." (Internal quotations omitted.) Kott-Looney included Aiello's personal information in some of her messages.

Aiello brought claims against Kott-Looney for defamation and intentional infliction of emotional distress. As to her defamation claim, Aiello alleged that Kott-Looney had been "actively making false statements of fact relating to Aiello to third parties via her defamatory posts and personal messages over the [school district's private] Facebook . . . Parent[] group," to which Aiello also belonged. According to Aiello, Kott-Looney had sent personal messages to at least thirty individuals within the Facebook group containing defamatory remarks about Aiello, including, but not limited to, that "Aiello was a stripper," "Aiello use[d] drugs like ecstasy and marijuana daily as she t[aught] children," "Aiello ha[d] a dangerous criminal history," and Aiello "had a sexual relationship with a minor female child." As a result of Kott-Looney's false statements, Aiello suffered stress, anxiety, mental anguish, and emotional distress that "she w[ould] lose her job and/or that Kott[-Looney] w[ould] continue to escalate to physical violence." According to Aiello, her emotional distress caused "physical ailments to appear, causing [her] to seek medical treatment and accrue actual damages."

As to her claim for intentional infliction of emotional distress, Aiello alleged that Kott-Looney had acted intentionally or recklessly "with regards to her defamation (not to mention her criminal harassment and stalking) of [Aiello] at her home, at her job, and online." According to Aiello, Kott-Looney's conduct was extreme and outrageous and had caused Aiello emotional distress, mental anguish, and physical pain because Aiello was concerned that she would lose her job and Kott-Looney would "escalate into physical violence."

Aiello sought damages for emotional distress, mental anguish, physical pain and suffering, and medical expenses.

Kott-Looney answered, generally denying the allegations in Aiello's petition and asserting various affirmative defenses. Kott-Looney then moved to dismiss Aiello's claims against her under the TCPA, arguing that the trial court should dismiss Aiello's claims because they were "based on, and . . . in direct response to . . . Kott-Looney's constitutional rights to petition, to exercise free speech, and to associate." According to Kott-Looney, Aiello's claims against her were based on the official grievance she filed with Aiello's school district, her report to law enforcement about Aiello's harassing behavior, and communications to parents in the school district—matters which involved Kott-Looney's right to free speech, right to petition, and right of association. Kott-Looney also argued, as to Aiello's claim for intentional infliction of emotional distress, that she was entitled to dismissal

under the TCPA because Aiello's claim was "based solely on alleged defamatory statements" and Aiello's only remedy was to "file a defamation claim against" Kott-Looney, which Aiello had done.

In her response to Kott-Looney's motion to dismiss, Aiello argued that Kott-Looney had not met her burden establishing she was entitled to dismissal under the TCPA because she had not demonstrated that Aiello's claims were based on or in response to Kott-Looney's exercise of the right of free speech, to petition, or of association. Specifically, Kott-Looney had not shown that this was "a matter of public concern subject to [the] TCPA." (Emphasis omitted.) Additionally, Aiello asserted that she had made a prima facie showing of defamation.

After a hearing, the trial court denied Kott-Looney's motion to dismiss.

## Standard of Review

The Texas Legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To that end, the TCPA provides for early dismissal of a legal action that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

10

We review de novo the denial of a TCPA motion to dismiss. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 352–53 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In deciding if a legal action should be dismissed under the TCPA, we consider "the pleadings, evidence a court could consider under [Texas] Rule [of Civil Procedure] 166a, . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). The plaintiff's allegations, and not the defendant's admissions or denials, constitute the basis of a legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the non-movant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

**Dismissal under TCPA**

In her first issue, Kott-Looney argues that the trial court erred in denying her motion to dismiss Aiello's defamation claim against her because the claim was based on Kott-Looney's exercise of the rights protected by the TCPA, Aiello failed to prove a prima facia case of defamation, and Aiello's defamation claim was barred by a defense. In her second issue, Kott-Looney argues that the trial court erred in

denying her motion to dismiss Aiello's intentional-infliction-of-emotional-distress claim against her because the claim was based on or in response to Kott-Looney's words or protected activity, Aiello failed to prove a prima facia case of intentional infliction of emotional distress, and Aiello's intentional-infliction-of-emotional-distress claim was legally unavailable.

The TCPA provides a procedure for the expedited dismissal of retaliatory lawsuits that seek to intimidate or silence citizens on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d at 589; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ("The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to" the party's "exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591

S.W.3d 127, 131 (Tex. 2019). A "[l]egal action" is "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (internal quotations omitted).

To be entitled to dismissal under the TCPA, the movant has the initial burden to "demonstrate[] that [a] legal action is based on or is in response to" the movant's exercise of the right to petition, association, or free speech. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also Lowry v. Fox Television Stations, LLC*, No. 01-20-00627-CV, 2022 WL 2720509, at *4 (Tex. App.—Houston [1st Dist.] July 14, 2022, no pet.) (mem. op.). If the movant meets her initial burden, then the burden shifts to the non-movant. *Diogu Law Firm PLLC v. Experience Infusion Ctrs. LLC*, No. 01-19-00494-CV, 2020 WL 1681182, at *2 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, no pet.) (mem. op.). Whether the movant has met her initial burden to show by a preponderance of the evidence that the non-movant has asserted a legal action based on or in response to the movant's right to petition, association, or free speech is reviewed de novo. *See Hall*, 579 S.W.3d at 377.

Kott-Looney asserts that Aiello's defamation and intentional-infliction-of-emotional-distress claims were "based on" or filed "in response to" the exercise of her right of free speech and association.[7]

The "[e]xercise of the right of free speech means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (internal quotations omitted). The "[e]xercise of the right of association means to join together to collectively express, promote, pursue, or defend common interests relating to a . . . matter of public concern." Id. § 27.001(2) (internal quotations omitted). A "[m]atter of public concern" means "a statement or activity regarding . . . a matter of political, social, or other interest to the community[] or a subject of concern to the public." Id. § 27.001(7) (internal quotations omitted). Aiello disputes that her claims against Kott-Looney involve a matter of public concern because Kott-Looney's false statements and behavior, on which Aiello's

---

[7] In her appellant's brief, Kott-Looney also mentions that Aiello's claims against her were "based on" or "in response to" her "right to petition." See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). However, she provides no substantive analysis for any argument that the trial court erred in denying her motion to dismiss because Aiello's defamation and intentional-infliction-of-emotional-distress claims were "based on" or "in response to" her right to petition. See TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). As such, we conclude that any argument that the trial court erred in denying her motion to dismiss because Aiello's claim involved Kott-Looney's right to petition is waived due to inadequate briefing. See Hooks v. Brenham Hous. Auth., No. 01-17-00602-CV, 2018 WL 6061307, at *2 (Tex. App.—Houston [1st Dist.] Nov. 20, 2018, no pet.) (mem. op.) ("A failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal.").

14

claims were based, only related to Aiello, only damaged Aiello's reputation, and only harmed Aiello's health.

The applicable definition of "[m]atter of public concern" is narrower now than at the TCPA's inception. *See Hayman v. Khan*, 693 S.W.3d 444, 449 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *3 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.). Specifically, the Legislature substantively amended the definition of "[m]atter of public concern" in 2019, deleting the "good, product, or service in the marketplace" and "environmental, economic, or community well-being" language from the definition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7); *Hayman*, 693 S.W.3d at 449–50; *see also Vaughn-Riley*, 2020 WL 7053651, at *3 (noting legislative history of definition of "[m]atter of public concern" reflected Legislature's intent to narrow TCPA's scope in 2019 amendments).

Communications are a matter of public concern when they can "be fairly considered as relating to any matter of political, social or other concern to the community" or when it "is a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotations omitted). "The arguably inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." *Id.* (internal quotations omitted). Deciding whether a communication is of public or

private concern requires us to examine the "content, form, and context" of that communication, "as revealed by the whole record." *Id.* (internal quotations omitted).

Notably, to fall within the "[m]atter of public concern" category, a communication must have public relevance beyond the private or personal interests of the parties. *See Creative Oil*, 591 S.W.3d at 136. Thus, a private dispute affecting only the fortunes of the private parties involved is simply not a "[m]atter of public concern" under any tenable understanding of those words. *See id.* at 134–37. When the communication involved does not relate to a matter of public concern, the assertion that it could result in a matter of public concern is beyond the reach of the act. *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied). As the Texas Supreme Court has explained, communications that are merely "related somehow to one of the broad categories" set out in the statute but that otherwise have no relevance to a public audience are not "communications made in connection with a matter of public concern." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 916 (Tex. 2023) (internal quotations omitted).

To determine whether Aiello's claims involve a "[m]atter of public concern," we first look to her pleadings, which are the "best and all-sufficient evidence of the nature of the action." *Hersh*, 526 S.W.3d at 467 (internal quotations omitted); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (pleadings are evidence in

16

TCPA cases). We cannot "blindly accept" attempts by the movant to characterize the non-movant's claims as implicating protected expression. *See Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd).

Aiello's claims against Kott-Looney stem from Kott-Looney's purportedly false statements about Aiello and her alleged harassment of Aiello. The record indicates that Kott-Looney's statements and behavior constituted personal attacks on Aiello's character stemming from a private dispute related to David's and Kott-Looney's marriage and affected only the parties involved. *See Creative Oil*, 591 S.W.3d at 136 (to be matter of public concern, claim must have public relevance "beyond the . . . interests of the private parties"); *Beard v. McGregor Bancshares, Inc.*, No. 05-21-00478-CV, 2022 WL 1076176, at *6 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.) ("The record is devoid of evidence that the dispute had any relevance to the broader community . . . . Rather, [the defendant's] Facebook statements were personal attacks on [the plaintiff's] character stemming from a private dispute affecting the fortunes of only the parties involved . . . ."); *Miranda v. Byles*, 390 S.W.3d 543, 554 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("An issue is not a public issue simply because it is a controversy of interest to the public."). Private disputes, whether sounding in contract or in tort, that merely affect the fortunes of the litigants are not matters of public concern. *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.*); see*

17

*also Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 477 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (tort claims with no potential impact on wider community or public audience were not matters of public concern under TCPA). Further, the fact that third parties may be involved does not automatically transform a private dispute into a matter of public concern. *See Morris*, 615 S.W.3d at 578.

Here, we have an obligation to consider Aiello's pleadings in the light most favorable to her and in favor of the conclusion that her claims are not reliant on protected expression. *Abundant Life Therapeutic Servs., Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at *3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied); *see also Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *2 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.). We must read Aiello's pleadings "in [a] manner most sympathetic to the TCPA's non-applicability." *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *4 (Tex. App.—Dallas Aug. 31, 2020, pet. denied) (mem. op.). "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d at 589.

Based on the foregoing, we conclude that Aiello's claims against Kott-Looney do not involve a matter of public concern, and as such, Kott-Looney is unable to establish by preponderance of the evidence that Aiello's suit against her is based on

or in response to her rights of free speech or association. *See, e.g.*, *Yu v. Koo*, 633 S.W.3d 712, 723 (Tex. App.—El Paso 2021, no pet.) (where appellant's statements did not involve "a matter of public concern," appellant unable to establish that they involved appellant's right of free speech). Thus, we hold that the trial court did not err in denying Kott-Looney's motion to dismiss.

We overrule Kott-Looney's first and second issues.

## Conclusion

We affirm the order of the trial court. We dismiss any pending motions as moot.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.